UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CHARLES M. STAR,

    **Plaintiff,**

    v.                                Case No. 15-cv-410

**CAPTAIN WILLIAM DUCKERT, et al.,**

    **Defendants.**

## SCREENING ORDER

Plaintiff Charles Star, a Wisconsin state prisoner, filed a pro se complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated while he was incarcerated at the Milwaukee County Jail. (Docket #1.) This matter is currently before me on plaintiff's motion to proceed in forma pauperis and for screening of plaintiff's complaint.

On April 9, 2015, I ordered plaintiff to pay an initial partial filing fee of $0.63, which plaintiff paid on April 29, 2015. Plaintiff made an additional payment of $0.63 on May 21, 2015. I will grant plaintiff's motion to proceed in forma pauperis.

### Screening of Plaintiff's Complaint

I am required by federal law to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). I must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not necessary for a plaintiff to plead specific facts and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts should follow the principles set forth in Twombly by first, "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. Legal conclusions must be supported by factual allegations. Id. If there are well-pleaded factual allegations, courts must, second, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon him by a person or persons acting under color of state law.

2

Buchanan-Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Village of North Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). I am obliged to give plaintiff's pro se allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

## Plaintiff's Allegations

The events alleged in plaintiff's complaint occurred while plaintiff was incarcerated at the Milwaukee County Jail. Plaintiff was a pretrial detainee, "pending revocation and trial for new charges." (Docket #1, at 8.) Plaintiff states that on January 7, 2015, he was escorted from general population to disciplinary housing pending investigation of a rule violation. Plaintiff was placed on "pending discipline status and was immediately punished by having his regular meals taken from him and fed the Aramark Nutraloaf [sic] as a form of punishment." (Docket #1, at 4.) Star was also denied "hygiene, the right to come out of his cell for daily exercise, showers, phone calls and was deprived of all legal mail, legal writing supplies and legal property, etc." (Id.) As a result of these conditions, which lasted for approximately twenty days, Star alleges his gums became swollen and bloody, he suffered from vomiting and significant weight loss, he had unbearable body odor, and boils and sores formed on his body.

On January 8, 2015, plaintiff notified defendant Williams that he believed his due process rights were being violated. She said she would look into it, and informed plaintiff on January 10, 2015, that he would remain on max custody status at this time and that his status would be reviewed weekly. That same day, plaintiff wrote to defendant Grove, the officer who first decided to place plaintiff on pending disciplinary status, in an attempt to

3

be returned to the general population, but she did not respond. Also on January 10, 2015, plaintiff filed a grievance, which defendant Artus responded to on January 12, 2015. Defendant Artus explained that plaintiff was on pending discipline status while an investigation into plaintiff's alleged rule violation was pending and that, while on pending discipline status, plaintiff would be treated the same as an inmate on actual discipline status.

On January 13, 2015, a disciplinary hearing was held for the rule infraction plaintiff allegedly committed on January 7, 2015. Defendant Montano was the hearing officer. Before the hearing, plaintiff informed defendant Montano that he would like to present witnesses and evidence that he believed would vindicate him. He also requested the assistance of a Staff Advocate and "the required 24-hour notice to prepa[re]." Defendant Montano informed plaintiff she could not reschedule the hearing because defendant Duckert had ordered her to hold the hearing that day, give plaintiff an automatic thirty days on disciplinary confinement, and place plaintiff on max custody status. Defendant Montano indicated that she didn't necessarily agree but that she had to follow orders.

Plaintiff appealed the decision on January 21, 2015, using an grievance form as instructed by defendant Montano. Plaintiff alleges that defendants Schmidt, Burmeister, Nyklewicz, and Clarke all refused to acknowledge or respond to his appeal. Although plaintiff received no response, the duration of his discipline was shortened from thirty days to twenty days.

Plaintiff argues that his right to due process was violated because: (1) defendants Williams, Grove, and Artus ordered that plaintiff be placed/remain in disciplinary segregation pending the investigation into a rule violation; (2) defendants Duckert and

4

Montano denied him a fair hearing; and (3) defendants Schmidt, Burmeister, Nylewicz, and Clarke failed to respond to his appeal of the disciplinary hearing outcome. In addition, construing the complaint liberally, it appears that plaintiff may also be attempting to state a claim regarding the conditions of his confinement in disciplinary segregation, which allegedly resulted in physical and emotional injury to plaintiff. Plaintiff is seeking declaratory and injunctive relief as well as money damages.

Discussion

As a threshold matter, I note that plaintiff purports to sue each of these defendants in both their individual and official capacity. The distinction between official capacity and individual capacity is significant. "Personal-capacity suits seek to impose liability upon a government official for actions he takes under color of state law. . . . Official capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent." Hill v. Shelander, 924 F.2d 1370, 1372 (7th Cir. 1991) (quoting Kentucky v. Graham, 473 U.S.159, 166 (1985)). In other words, a personal-capacity suit is appropriate when an official, acting under the color of state law, personally deprives a plaintiff of a federal right. Id. On the other hand, an official-capacity suit is appropriate when a person is only executing or implementing the official policy or custom of a government entity. Id. Plaintiff's allegations do not indicate or imply the existence of an official policy or custom. Instead, plaintiff alleges that each defendant acted on their own to deprive plaintiff of his constitutional right to due process. Accordingly, plaintiff has not stated claims against any of these defendants in their official capacity.

Turning to plaintiff's due process claims, plaintiff first alleges that he should not have been removed from the general population pending the investigation of the alleged rule

5

violation.  "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of those interests is at stake." Wilkerson v. Austin, 545 U.S. 209, 221 (2005).  The Seventh Circuit has held that an inmate may have a liberty interest in avoiding administrative segregation if the more restrictive conditions of segregation are particularly harsh compared to ordinary prison life.  See Earl v. Racine Cnty. Jail, 718 F.3d 689, 691 (7th Cir. 2013).  Plaintiff alleges that while on pending disciplinary status he was treated as though he were in disciplinary segregation:  He was denied regular meals and instead fed Nutraloaf, he was prevented from performing basic hygiene such as taking showers and brushing his teeth, and he was denied access to his mail and legal writing supplies.  As a result, plaintiff claims he suffered from swollen, bloody gums as well as bouts of vomiting due to an overwhelming body order.  Based on these allegations, I find that plaintiff has stated a due process claim against defendants Williams, Grove, and Artus, for their decisions to remove plaintiff from the general population and place and/or keep him on pending disciplinary status.

Second, plaintiff argues that his disciplinary hearing, which allegedly was a sham, did not provide him with adequate due process.  To challenge the process plaintiff was afforded in his disciplinary proceeding, plaintiff must meet two requirements: (1) He must demonstrate that he has a liberty interest the state has interfered with; and (2) He must demonstrate that the procedures he was afforded upon that deprivation were constitutionally deficient.  Scruggs v. Jordan, 485 F.3d 934, 939 (7th Cir. 2007).  Here, based on plaintiff's allegations that the conditions of disciplinary segregation are significantly harsher than those enjoyed while in the general population, I find that, at this

6

stage, plaintiff has sufficiently alleged that he has a liberty interest in remaining in the general population. In addition, based on plaintiff's allegations that defendants Duckert and Montano failed to provide plaintiff with notice of his alleged violation, refused to allow him to present witnesses or other evidence, and decided he would receive thirty days in max custody before the hearing even occurred, I find that plaintiff has sufficiently alleged that the procedures he was afforded were constitutionally deficient. See Id. at 939 ("Due process requires that prisoners in disciplinary proceedings be given: '(1) advance (at least 24 hours before hearing) written notice of the claimed violation; (2) the opportunity to be heard before an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence (when consistent with institutional safety); and (4) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action.'" (citing Rasheed-Bey v. Duckworth, 969 F.2d 357, 351 (7th Cir. 1992))). As such, plaintiff may proceed with his due process claims against defendants Duckert and Montano.

Third, plaintiff argues he was denied due process when jail officials refused to respond to his appeal of the disciplinary hearing outcome. Defendants may have violated prison procedures, but prison procedures themselves are not substantive liberty or property interests that are protected by the Due Process Clause, Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996); Shango v. Jurich, 681 F.2d 1091, 1100–01 (7th Cir. 1982), and a violation of state laws or regulations is not a basis for a federal rights suit, see Guajardo-Palma v. Martinson, 622 F.3d 801, 806 (7th Cir. 2010). As such, plaintiff cannot state claims against defendants Burmeister, Nylewicz, Schmidt, and Clarke for their failure to acknowledge and/or respond to his appeal of the disciplinary hearing outcome.

Finally, plaintiff complains of the conditions of his confinement in disciplinary segregation. Plaintiff was a pretrial detainee and therefore not subject to punishment. Grieveson v. Anderson, 538 F.3d 763, 771 (7th Cir. 2008). Accordingly, plaintiff's conditions of confinement allegations are to be analyzed under the Fourteenth Amendment rather than the Eighth Amendment. Id. This, however, is a distinction with little meaning given that the inquiry under both provisions is essentially the same. Id. Regardless, plaintiff fails to state a claim. He does not allege who was responsible for the conditions, who had knowledge of the conditions, or whether anyone ignored or denied requests for improvement to the conditions (e.g., by denying his request for a toothbrush, toothpaste, or a shower). Further, plaintiff's allegations are confined to his own experience; he does not allege that a policy, practice, or custom resulted in adverse conditions for all inmates. As alleged, I cannot draw a reasonable inference that any of the defendants is liable for the misconduct alleged. As such, I find that plaintiff has not successfully pleaded a claim regarding the conditions of his confinement while in disciplinary segregation.

With regard to plaintiff's request for injunctive relief, I will deny this request as moot because plaintiff is no longer incarcerated at the Milwaukee County Jail but is now in the custody of the Wisconsin Department of Corrections. Plaintiff has not shown a realistic possibility that he will again be incarcerated in the Milwaukee County Jail and therefore subjected to the same actions he complains of in his complaint. See Maddox v. Love, 655 F.3d 709, 716 (7th Cir. 2011) (claim for injunctive relief moot where he was no longer an inmate at the facility at issue).

**THEREFORE, IT IS ORDERED** that plaintiff's motion for leave to proceed in forma pauperis is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's claims against defendants in their official capacity are **DISMISSED**.

**IT IS ALSO ORDERED** that plaintiff's claims against defendants Burmeister, Nylewicz, Schmidt, and Clarke in their individual capacity are **DISMISSED**.

**IT IS FURTHER ORDERED** that pursuant to the informal service agreement between Milwaukee County and this court, copies of plaintiff's complaint and this order are being electronically sent today to Milwaukee County for service on the following Milwaukee County defendants: Duckert, Williams, Artus, Montano, and Grove.

**IT IS ALSO ORDERED** that, pursuant to the informal service agreement between Milwaukee County and this court, defendants Duckert, Williams, Artus, Montano, and Grove shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from plaintiff's prison trust account the $348.74 balance of the filing fee by collecting monthly payments from plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action.

**IT IS ALSO ORDERED** that copies of this order be sent to the warden of the institution where the inmate is confined.

**IT IS FURTHER ORDERED** that, pursuant to the Prisoner E-Filing Program, plaintiff

shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is in effect at Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility and, therefore, if the plaintiff is no longer incarcerated at one of those institutions, he will be required to submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 25th day of June, 2015.

>s/ Lynn Adelman
>_____
>LYNN ADELMAN
>District Judge