# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

CHARLES M. STAR,
      Plaintiff,

v.                                           Case No. 15-CV-410

WILLIAM DUCKERT, BEVERLY WILLIAMS,
STEVEN ARTUS, CRYSTALINA MONTANO,
and ERIN GROVE,
      Defendants.

## DECISION AND ORDER

Plaintiff, Charles M. Star, filed this pro se civil rights complaint under 42 U.S.C. § 1983 alleging that defendants, officials at the Milwaukee County Jail (MCJ) violated his Fourteenth Amendment right to due process while he was being held as a pretrial detainee. Defendants now move for summary judgment.

## I. BACKGROUND

I consider the following facts in the light most favorable to plaintiff: Plaintiff was a pretrial detainee at MCJ from September 3, 2014 to April 17, 2015. When he arrived, MCJ placed plaintiff on "maximum custody status" on Unit 4D due to the nature of his pending charges, which included battery to a law enforcement officer. MCJ uses maximum custody status to administratively segregate "those inmates who pose a potential risk of harm to themselves or others, especially law enforcement officers, from those inmates who are placed in general population." Duckert Decl., ECF No. 50, ¶ 15. Unit 4D also houses inmates placed on "disciplinary status" for violating MCJ rules, but

1

inmates on disciplinary status are subject to a host of restrictions (*e.g.*, on phone use, food, mail, visits) that do not apply to those on maximum custody status.

On November 14, 2014, defendant William Duckert removed plaintiff from maximum custody status and approved his relocation to general population. About six weeks later, plaintiff was involved in a physical altercation with another inmate. Plaintiff was placed back on Unit 4D on "pending discipline status" pending a disciplinary hearing. Defendant Erin Grove made the decision to place plaintiff on pending discipline status based on her review of video of the incident and MCJ's zero-tolerance policy regarding physical altercations. Plaintiff was given Aramark Nutraloaf to eat rather than regular meals and was subject to the numerous other restrictions that apply to those on disciplinary status. Plaintiff spoke with and wrote to defendant Beverly Williams and filed a grievance with defendant Steven Artus about these restrictions and his status, but they did not intervene on his behalf. In response to plaintiff's grievance, Artus wrote, "Your [sic] were involved in a physical altercation with another inmate on 01/07/15 and are currently on pending discipline status while the investigation in [sic] being looked into. While this happenes [sic] you will receive only the items every other discipline inmate gets." ECF No. 47-2.

After six days on pending discipline status, defendant Crystalina Montano conducted plaintiff's disciplinary hearing. Prior to the hearing, Montano reviewed video of the altercation and a report by Correctional Officer Michael Bromwell (not a defendant) about the altercation. Plaintiff informed Montano that he had not received advance notice of the hearing or the allegations against him and that he had

2

exculpatory evidence to present—in the form of eyewitnesses, video footage, and documents—and requested assistance of a staff advocate and 24 hours to prepare. Plaintiff states that Montano told him that "she could not reschedule the hearing because Captain Duckert ordered her to conduct the hearing that day, and that [Duckert] told her to give [plaintiff] an automatic 30 days on Disciplinary Confinement followed by placement into Maximum Custody." Star Decl., ECF No. 75, ¶ 18. Duckert disputes this, saying, "I do not get involved in the disciplinary determinations that are made by the hearing officer, nor do I order a hearing officer to conduct a disciplinary hearing . . . ." Duckert Decl., ECF No. 50, ¶ 50.

Montano denied plaintiff's requests to delay the hearing, for an opportunity to present evidence, and for assistance of an advocate; informed plaintiff of the allegations against him; gave him an opportunity to speak on his own behalf; sustained the allegations against him; and placed him on disciplinary status for 30 days, minus the 6 days he had already served on pending discipline status.

Duckert placed plaintiff back on maximum custody status after his time on disciplinary status ended. Plaintiff remained on Unit 4D on maximum custody status until he was released from MCJ.

## II. DISCUSSION

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor.

3

*Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). For the purposes of deciding this motion, I resolve all factual disputes and make all reasonable factual inferences in favor of the non-moving party. *Springer v. Durflinger*, 518 F.3d 479, 483–84 (7th Cir. 2008).

## A. Six Days on Pending Discipline Status

Plaintiff first claims that Grove, Artus, and Williams punished him in violation of his due process rights when they placed and kept him on pending discipline status for six days before his disciplinary hearing. "A pretrial detainee cannot be . . . punish[ed] for a disciplinary infraction without notice and an opportunity to be heard; due process requires no less." *Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir. 2002) (first citing *Rapier v. Harris*, 172 F.3d 999, 1004–05 (7th Cir. 1999); and then citing *Mitchell v. Dupnik*, 75 F.3d 517, 524–25 (9th Cir. 1996)). However, a pretrial detainee can be "placed in segregation not as punishment but for managerial reasons" without being entitled to any process. *Id.* (first citing *Bell v. Wolfish*, 441 U.S. 520, 535–41 (1979); then citing *Rapier*, 172 F.3d at 1002–06; and then citing *Fuentes v. Wagner*, 206 F.3d 335, 341–42 (3d Cir. 2000)).

Defendants argue that plaintiff was placed on pending discipline status for managerial reasons and was, therefore, owed no process prior to his disciplinary hearing. Valid managerial reasons for imposing restrictions on a pretrial detainee include protecting him from other prisoners and protecting "jail staff from his violent propensities." *Id.* (first citing *Bell*, 441 U.S. at 547; then citing *Anderson v. County of Kern*, 45 F.3d 1310, 1314 (9th Cir. 1995); and then citing *Olgin v. Darnell*, 664 F.2d 107,

4

109 (5th Cir. 1981)). Grove had probable cause to believe that plaintiff had been in a fight, so I have no trouble finding that she was entitled, in the interest of sound jail management, to segregate him from other detainees and staff. This does not mean, though, that plaintiff was not being punished.

Segregating plaintiff may have been managerial, but placing him on pending discipline status was clearly punitive. An action is punitive "when the restriction or condition is not rationally related to a legitimate non-punitive government purpose[] or when the restriction is excessive in light of that purpose." *Rapier*, 172 F.3d at 1005 (citing *Bell*, 441 U.S. at 538). If defendants' purpose was simply to segregate plaintiff, placing him on pending discipline status was not rationally related to that purpose and was excessive in light of it. Defendants could have instead placed him on maximum custody status pending his disciplinary hearing. He would have been isolated on the same unit but would not have been subjected to the additional deprivations, such as food and phone restrictions, that characterize pending discipline status (as well as disciplinary status).

The additional deprivations of pending discipline status make that designation punitive in this case. First, I cannot see how the additional deprivations to which plaintiff was subjected as he awaited his disciplinary hearing served any purpose other than to punish him for alleged rules infractions. For example, there is no non-punitive justification for serving plaintiff nothing but Nutraloaf when another inmate on the same unit on maximum custody status would have been served regular meals instead.

5

Second, pending discipline status appears to be indistinguishable from disciplinary status, aside from the fact that an inmate is placed on the former before a disciplinary hearing and the latter afterward. The same restrictions apply to inmates on both statuses. Also, Montano credited plaintiff's 6 days on pending discipline status toward his 30 days on disciplinary status, indicating that time served on one is equivalent to time served on the other. If the two statuses are equivalent, I cannot see how one can be managerial and the other punitive. Placing a detainee on disciplinary status is clearly a punitive action meant to deter future misconduct, so placing a detainee on pending discipline status must be too.

Because he was being punished, plaintiff was entitled to notice and an opportunity to be heard, but a hearing need not be held "predeprivation . . . in every case." *Holly v. Woolfolk*, 415 F.3d 678, 680 (7th Cir. 2005). To determine whether defendants' failure to hold a hearing prior to punishing plaintiff deprived him of due process, I must apply "the sliding-scale approach of *Mathews v. Eldridge*, which requires comparison of the costs and benefits of alternative remedial mechanisms." *Id.* (citation omitted) (citing *Mathews v. Eldridge*, 424 U.S. 319, 332–35 (1976)). Under *Mathews*, I must consider (1) the private interest that will be affected, (2) the risk of an erroneous deprivation, and (3) the government interest. *Mathews*, 424 U.S. at 335.

Applying *Mathews*, I find that plaintiff was entitled to a hearing before being punished. Pretrial detainees have a well-recognized, protected interest in being free from punishment without due process for misconduct in jail. "[P]retrial detainees, serving no sentence and being held only to answer an accusation at trial, have no expectation

6

that, simply by virtue of their status as pretrial detainees, they will be subject to punishment." *Rapier*, 172 F.3d at 1003. Under the circumstances, the risk of erroneous deprivation in this case was slight because defendants had probable cause (based on direct observation and clear video evidence) to believe that plaintiff had violated MCJ's zero-tolerance policy toward physical altercations. But, the government's interest here is also slight. While the government has a clear (and often overriding) interest in maintaining safety, discipline, and order within its jails, *see Hewitt v. Helms*, 459 U.S. 460, 472–77 (1983), defendants could have fully satisfied that interest by placing plaintiff on maximum custody status (*i.e.*, in administrative, rather than disciplinary, segregation) pending their investigation of and a disciplinary hearing on plaintiff's alleged rules violations. They could have then provided him with a hearing before punishing him for his alleged misconduct.

Even if there was a constitutional violation here, though, defendants are entitled to qualified immunity. "As a general rule, government officials performing discretionary functions are 'shielded from liability for civil damages insofar as their conduct does not violate "clearly established" statutory or constitutional rights of which a reasonable person would have known.'" *Rapier*, 172 F.3d at 1006 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Government officials may only be subject to liability for civil damages when "the law is clearly established at a level of sufficient specificity." *Id.*

The governing law in the Seventh Circuit is not sufficiently specific to allow me to find that a reasonable person would have known that defendants' actions were unconstitutional. In *Rapier v. Harris*, the Seventh Circuit discussed punishment of

7

pretrial detainees for jail misconduct and suggested that process is due beforehand, but the court ultimately decided the case on the basis of qualified immunity without deciding whether the failure to provide a predeprivation hearing amounted to a constitutional violation. *See Rapier*, 172 F.3d at 1005–06. More recently, the Seventh Circuit dismissed its suggestion in *Rapier* that a hearing must be held predeprivation as "dictum" and decried the application of "[s]o adamantine a rule." *Holly*, 415 F.3d at 681. Instead, the Seventh Circuit held that "the due process clauses do not confer a right to a predeprivation hearing in every case" and instructed courts to apply *Mathews*, as I did above. *Id.* at 680. *Mathews* calls for a flexible, case-by-case approach, *see Mathews*, 424 U.S. at 334, and existing precedent does not directly answer the question at issue. As such, I cannot find that governing law is specific enough to overcome qualified immunity. Therefore, defendants are entitled to summary judgment on this claim.

### B. Disciplinary Hearing

Plaintiff next claims that Duckert and Montano denied him various procedural protections during his disciplinary hearing in violation of his procedural due process rights. Specifically, he claims that the outcome of his hearing was predetermined, so he was denied an impartial decision maker, and that Montano refused his requests for additional time to prepare, the opportunity to present evidence and witnesses, the opportunity to view the evidence against him, and the assistance of a staff advocate, all of which denied him a full and fair opportunity to defend himself.

As stated above, a pretrial detainee cannot be punished "for a disciplinary infraction without notice and an opportunity to be heard; due process requires no less."

8

*Higgs*, 286 F.3d at 438 (first citing *Rapier*, 172 F.3d at 1004–05; and then citing *Mitchell*, 75 F.3d at 524–25). Plaintiff received this much. He was informed of the disciplinary charges against him and given an opportunity to share his version of the events. Montano reviewed the evidence, considered plaintiff's statement, and sustained the disciplinary charges against him.

The question then is whether due process requires anything more. The controlling precedent as to pretrial detainees facing disciplinary action for misconduct is vague as to what specific procedural protections are due. *See, e.g.*, *Rapier*, 172 F.3d at 1005 (noting in dictum that jail officials must "afford[] the detainee *some sort of procedural protection*" when "punish[ing] a pretrial detainee for misconduct while in pretrial custody" (emphasis added)). Therefore, I will analogize from case law governing prison disciplinary hearings, accounting for the clear difference between convicted prisoners and pretrial detainees.

I find that due process requires more than plaintiff received here. In *Wolff v. McDonnell*, 418 U.S. 539 (1974), and *Meachum v. Fano*, 427 U.S. 215 (1976), the Supreme Court held that convicted prisoners are entitled to certain procedural protections when the state threatens a liberty interest rooted in the Due Process Clause. Such an interest is threatened when a prisoner is subjected to "terms of confinement [not] ordinarily contemplated by a prison sentence," *Hewitt*, 459 U.S. at 468, or "consequences . . . [that] are qualitatively different from the punishment characteristically suffered by a person convicted of a crime," *Vitek v. Jones*, 445 U.S. 480, 493 (1980). "However, pretrial detainees are not similarly situated" to convicted

9

prisoners and have a recognized interest in being free from punishment without due process. *Rapier*, 172 F.3d at 1004. As such, pretrial detainees facing disciplinary action are owed some procedural protections.

In the context of prison disciplinary hearings, the Supreme Court has held that determining what process is required in a given situation requires a flexible approach that accommodates the inmate's interests and the institution's needs. *Wolff*, 418 U.S. at 556–72. For example, a convicted prisoner placed in administrative segregation pending an investigation into misconduct charges against him is only owed notice of the charges against him and an opportunity to tell his side of the story. *Hewitt*, 459 U.S. at 476–77. On the other hand, a convicted prisoner facing loss of a state-law right to good-time credit (and, as a result, the potential for additional prison time) because of serious misconduct is owed a panoply of procedural protections, including advance written notice of at least 24 hours, a written statement of the evidence relied upon by the factfinder, the right to call witnesses and present evidence if doing so will not threaten institutional safety or undermine institutional goals, and a sufficiently impartial decision maker. *Wolff*, 418 U.S. at 556–72.

I find that plaintiff was owed something more than that required by *Hewitt* but something less than that required by *Wolff*. Plaintiff was being disciplined, so *Hewitt*'s requirements for placing an inmate in *administrative* segregation provide too little protection. However, upon a finding of misconduct, plaintiff was only subject to a relatively short period of additional restrictions beyond what he faced under administrative segregation, so *Wolff*'s requirements for a finding of serious misconduct

10

subjecting an inmate to the possibility of additional prison time provide more protection than is necessary under the circumstances.

Under the circumstances, I find that MCJ policy provides an adequate balance between the interests of pretrial detainees and that of MCJ and a reasonable middle ground between the relatively lax requirements of *Hewitt* and the more demanding requirements of *Wolff*. According to MCJ's *Inmate Handbook*, pretrial detainees charged with involvement in a physical altercation (or violation of a similarly serious MCJ rule)

- Will be given a copy of the disciplinary notice 24 hours prior to a hearing that contains the rule(s) violated and a description of what happened.
- Will be scheduled for a hearing within seven (7) days of the violation. The hearing may be conducted earlier if you waive the 24-hour notice.
- May attend the hearing but have the option of waiving your right to attend by submitting [a] written statement to the hearing officer.
- Will be given an opportunity to call witnesses who have relevant information to the charges and to present documentary evidence on your behalf except when doing so would jeopardize security. Reasons for denying such a request are to be stated in writing and given to the inmate. However, inmates do not have the right to confront or cross-examine witnesses or the right to civilian counsel.
- Will receive a written copy of the hearing officer's decision.
- If you wish to appeal the decision: Submit an appeal in writing to the Jail Commander or designee within 14 days of receiving the decision.
- The Jail Commander or designee will review your appeal and make a decision within seven (7) working days of receiving it. A written copy will be given to you. This decision is **FINAL**.

ECF No. 51-1, at 3. MCJ policy provides detainees with most of the procedural protections required under *Wolff* but the process can be somewhat more informal. This reasonably accounts for a pretrial detainee's interest in being free from punishment without due process without imposing on MCJ the costs of providing the full range of procedural protections that would be owed if more were at stake. Taking the facts in the

11

light most favorable to plaintiff, I find that he was denied many of these procedural protections.

However, even if plaintiff was owed additional procedural protections that he did not receive, his claim still fails for two reasons. First, defendants' failure to provide plaintiff with the opportunity to call witnesses and present evidence on his behalf was harmless under the circumstances. If an inmate is not harmed by such denials of process, there is no due process violation. *See, e.g.*, *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011); *Piggie v. Cotton*, 344 F.3d 674, 678, 680 (7th Cir. 2003)). Plaintiff argues that he was denied the right to present evidence and witnesses that would have shown that he acted in self-defense, but self-defense is not a valid defense under MCJ's zero-tolerance policy toward physical altercations. *See* ECF No. 51-1, at 2. Plaintiff admitted that he was involved in a physical altercation and, thus, that he violated the rules that he was alleged to have violated. No amount of additional process would have changed the outcome of his disciplinary hearing, so I cannot find that he was harmed by being denied these procedural protections.

Second, defendants are entitled to qualified immunity. The governing law at the time of plaintiff's disciplinary hearing states that pretrial detainees facing disciplinary action are owed nothing less than "notice and an opportunity to be heard," *Higgs*, 286 F.3d at 438 (first citing *Rapier*, 172 F.3d at 1004–05; and then citing *Mitchell*, 75 F.3d at 524–25), which he received. While my review of precedent governing prison disciplinary hearings led me to find that due process requires more than plaintiff was given, that determination was based on a flexible balancing of competing interests and analogy to

12

case law that has not been held to apply to pretrial detainees. In the absence of sufficiently specific governing law stating the minimal procedural protections due to detainees facing disciplinary action for misconduct while in pretrial custody, I cannot find that a reasonable person would have known that defendants' actions were unconstitutional. Therefore, defendants are entitled to summary judgment on this claim.

## III. CONCLUSION

**IT IS THEREFORE ORDERED** that defendants motion for summary judgment (ECF No. 44) is **GRANTED** and this case is **DISMISSED.**

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. I may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask me to alter or amend my judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. I cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more

13

than one year after the entry of the judgment. I cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

I expect parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin, this 1st day of December, 2016.

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge